**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MEDLINE INDUSTRIES, LP<br><br>               Plaintiff,<br>    v.<br><br>C.R. BARD, INC.<br><br>              Defendant. | Civil Action No. 1:14-cv-03618<br><br>The Honorable John Z. Lee<br><br>████████████ |

**MEMORANDUM IN SUPPORT OF MEDLINE'S MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

    A.    Bard's September 2018 Survey ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .................................................................. 2

    B.    Medline Seeks Survey Evidence of Clinicians' Usage of the SureStep Kit from Bard in Fact Discovery and Bard Fails to Produce the 2018 Survey..................... 2

    C.    Bard's Experts Opine that the Underpad Is Not Regularly Used and Claim They Are Aware of No Evidence to the Contrary.......................................................... 3

    D.    Bard Urges the Court to Deny Summary Judgment and Exclude Expert Testimony Because of a Lack of Evidence of the Extent of Underpad Use........... 4

LEGAL STANDARD....................................................................................................... 5

ARGUMENT ................................................................................................................... 8

I.    Bard's Failure to Produce the 2018 Survey Violated its Discovery Obligations. ............. 8

II.    Bard's Discovery Violation Is Neither Substantially Justified Nor Harmless................. 10

III.    Bard Should Be Sanctioned for Failing to Produce the 2018 Survey.............................. 12

    A.    Bard Should Be Precluded from Disputing the Extent of Underpad Use............. 12

    B.    The Court Should Instruct the Jury to Award Damages for All SureStep Sales. . 13

    C.    The Court Should Inform the Jury that Bard Withheld Evidence of the Extent of its Infringement. ................................................................................................. 14

    D.    No Lesser Sanctions Would Be Adequate or Appropriate. ................................. 14

    E.    The Court Should Order Bard to Show Cause for Its Failure to Produce the 2018 Survey and Reserve the Question of Further Sanctions....................................... 15

CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Worthington Cylinder Corp.*,
  No. 16 CV 7548, 2021 WL 4440317 (N.D. Ill. Jan. 19, 2021)................................12

*Bailey v. Worthington Cylinders Wisconsin LLC*,
  No. 16 C 07548, 2021 WL 3362419 (N.D. Ill. Aug. 3, 2021)................................12

*Colyer v. City of Chicago, Gildardo Sierra*,
  No. 12 C 04855, 2016 WL 25710 (N.D. Ill. Jan. 4, 2016) ................................7, 12

*e360 Insight, Inc. v. Spamhaus Project*,
  658 F.3d 637 (7th Cir. 2011) ................................6, 7, 12, 15

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
  946 F.3d 1367 (Fed. Cir. 2020)................................14

*In re Golant v. Levy*,
  239 F.3d 931 (7th Cir. 2001) ................................15

*Howard v. Sweetheart Cup Co.*,
  No. 00 C 648, 2001 WL 721765 (N.D. Ill. June 27, 2001) ................................7

*Jones v. Bremen High Sch. Dist. 228*,
  No. 08 C 3548, 2010 WL 2106640 (N.D. Ill. May 25, 2010) ................................7

*Keach v. U.S. Tr. Co.*,
  419 F.3d 626 (7th Cir. 2005) ................................6

*Medline Industries, Inc. v. C.R. Bard, Inc.*,
  No. 17 C 7216, 2021 WL 809734 (N.D. Ill. Mar. 3, 2021) ................................7, 8

*Melendez v. Illinois Bell Telephone Co.*,
  79 F.3d 661 (7th Cir. 1996) ................................7

*Negrete v. Amtrak*,
  No. 05 C 873, 2007 U.S. Dist. LEXIS 112549 (N.D. Ill. 2007)................................7

*NeuroGrafix v. Brainlab, Inc.*,
  No. 12 C 6075, 2021 WL 1057312 (N.D. Ill. Mar. 18, 2021) ................................15

*Northington v. H & M Int'l*,
  No. 08-CV-6297, 2011 WL 663055 (N.D. Ill. Jan. 12, 2011)................................6

*Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*,
   No. 16 C 3401, 2022 WL 160282 (N.D. Ill. Jan. 18, 2022) ....................................................12

*Spina v. Forest Pres. of Cook Cnty.*,
   No. 98 C 1393, 2001 WL 1491524 (N.D. Ill. Nov. 23, 2001) ...................................................7

*Total Control, Inc. v. Danaher Corp.*,
   359 F. Supp. 2d 387 (E.D. Pa. 2005) .....................................................................................13

**Rules**

Fed. R. Civ. P. 26(e)(1)(A) ........................................................................................................6, 8

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................................................6

Fed. R. Civ. P. 37(c) ......................................................................................................................6

**INTRODUCTION**

A 2018 Bard survey of clinicians that Bard failed to produce in this case directly contradicts its expert reports and litigation positions.  Had Bard complied with its discovery obligations, Medline and the Court would have been spared substantial time and resources.  Bard's serious discovery failure warrants sanctions.

The '786 patent requires a step of placing a layer of wrap (an "underpad") beneath a patient.  The instructions for Bard's accused SureStep kit direct clinicians to "[p]lace underpad beneath patient."  (Dkt. No. 694 at 9.)  Notwithstanding these product instructions, Bard argued in expert reports and in briefing that Medline lacked sufficient evidence of how frequently clinicians using SureStep place the included underpad.  For example, Bard argued that Medline's damages expert, Dr. Vander Veen, "has no evidence showing how often the underpad step is performed" and "no survey was conducted."  (Dkt. No. 531 at 6 (emphasis added).)

But Bard was withholding precisely the type of survey evidence it claimed was lacking.  Specifically, in September 2018, Bard conducted a survey (the "2018 Survey") ██████████ ██████████████████████████████████████████████ Ex. 1.  The 2018 Survey asked: ████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████████ Yet Bard never produced the 2018 Survey in this case, and it came to Medline's attention only when Bard produced it in July 2022 in related litigation in the Northern District of Georgia.

Although the Court granted summary judgment of direct and induced infringement and denied Bard's *Daubert* motions (Dkt. Nos. 683, 694), Bard has confirmed that it intends to dispute the extent of use of the underpad at trial, at least as part of an effort to dispute the amount of damages Medline is entitled to.  Bard should be precluded from doing so.

1

Bard's conduct justifies serious sanctions. The 2018 Survey directly bears on a disputed issue in this case, which Bard forced Medline to litigate, and forced the Court to resolve, while Bard held evidence directly contradicting its positions. And Bard continues to press that issue. Bard should be precluded at trial from disputing the extent to which clinicians using SureStep place the underpad in the kit, whether through attorney argument, or direct or cross examination. Additionally, the jury should be informed of Bard's misconduct, and informed that it may award damages on all sales of SureStep kits. The Court should grant Medline's motion and award this and any other relief the Court deems appropriate.

## FACTUAL BACKGROUND

**A.** **Bard's September 2018 Survey** ████████████████████████████
████████████████████.

In approximately September 2018, Bard conducted ███████████████████████
███████████████████████████ Ex. 1. The survey ███████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

**B.** **Medline Seeks Survey Evidence of Clinicians' Usage of the SureStep Kit from Bard in Fact Discovery and Bard Fails to Produce the 2018 Survey.**

In document requests served in 2014, Medline requested that Bard produce: "*customer usage surveys* concerning the Accused Products," as well as "any *consumer surveys* concerning the Accused Products." Ex. 2 at 143, 195 (RFPs 27 and 39) (emphases added). Medline also requested documents "concerning the product features that are most important to purchasers, or

2

customers of the Accused Products when making their purchase decisions, and any analyses, evaluations, surveys, and reviews concerning such features and decisions." *Id.* at 273 (RFP 61). Bard agreed it would produce responsive documents. *Id.* at 143-144, 195-197, 274-277.

Fact discovery closed on May 31, 2019. (Dkt. No. 367.) Bard did not produce the 2018 Survey. However, Bard clearly viewed surveys of SureStep use as relevant. In December 2016, Bard produced an "Observational Study" of Foley kit use, comparing "compliance rates" with directions for use as between SureStep and other Bard Foley kits . Ex. 3 (BARD_1085100).

### C. Bard's Experts Opine that the Underpad Is Not Regularly Used and Claim They Are Aware of No Evidence to the Contrary.

In 2019, Bard served expert reports from Dr. Edward Yun, Dr. Richard Hillstead, and Mr. Raymond Sims, Exs. 4-7, arguing for the first time that the provided SureStep underpad was not always used. Dr. Yun claimed that the step of placing the underpad is not necessarily performed, and cited the 2016 "Observational Study" in support. Ex. 4 (Yun Opening Rpt.) ¶¶ 35, 91; Ex. 5 (Yun Rebuttal Rpt.) ¶¶ 27-29. Dr. Hillstead also questioned the extent of underpad use, stating his understanding "that clinicians do not always perform this step." Ex. 6 ¶ 95, *see also* ¶¶ 87, 90, 91. Mr. Sims, relying on Dr. Yun, opined that "the asserted claims of the '786 Patent would not always be practiced even when the accused products are used." Ex. 7 pp. 7, 34, 98.

Dr. Yun and Dr. Hillstead reiterated these opinions in their depositions. Dr. Yun testified that, "the majority of the time I'm not using the underpad or the underpad is not used in these kits," and clarified that by "majority," he meant that "80 to 85 percent of the time that underpad isn't used." Ex. 8 at 109:8-10, 24-25. Dr. Yun was aware of evidence of underpad use, identifying the 2016 "Observational Study," and contended that this study showed ███████ ████████████████████████████████ *Id*. at 115:9-116:4. But Dr. Yun testified that he could not recall any other evidence regarding use of the SureStep underpad. *Id*. at 116:5-8.

3

Dr. Hillstead testified that he was not aware of any evidence concerning the use of the SureStep kit in accordance with the Directions for Use ("DFUs"). Ex. 9 at 124:6-14. When asked specifically whether he had an opinion as to "what percentage of catheterizations using SureStep kits have been performed by end users who have placed an underpad included in the kit," Dr. Hillstead responded, "No, I have not been provided nor did I ask for a research percentages of procedural use in any way." *Id*. at 124:16-23.

### D.     Bard Urges the Court to Deny Summary Judgment and Exclude Expert Testimony Because of a Lack of Evidence of the Extent of Underpad Use.

In the fall of 2020, Medline moved for summary judgment of direct infringement and inducement of infringement of claim 1 of the '786 patent. In response, Bard argued to the Court that Dr. Yun's and Dr. Hillstead's opinions showed that the underpad was not always used, highlighting "the absence of evidence" that this step was performed. (Dkt. No. 579 at 18-19.) Bard stated that the DFUs provided in its SureStep kits do not "require the clinician to place beneath the patient specifically the underpad that comes in the SureStep Kit." (*Id*. at 19, 29.) Bard contended that "Bard has no duty to show how often the underpad is or is not used," and argued that Medline could have "taken surveys of clinicians, but it didn't." (*Id*. at 22-23.) *See also* Dkt. No. 579-1 at 32 ("the SureStep Kit's DFU does not require clinicians to use specifically the underpad that comes in the kit"); *id.* at 33 ("a clinician could perform every step of the SureStep Kit's Directions for Use without performing all of the method steps" as they might not use "the underpad that comes in the SureStep Kit").)

Bard also filed *Daubert* motions challenging testimony of Medline's experts. As noted above, in its Fall 2020 *Daubert* motion regarding Dr. Vander Veen, Bard contended that he "has no evidence showing how often the underpad step is performed," and that "no survey was conducted." (Dkt. No. 532 at 6.) Bard criticized Ms. Weintraub, a practicing nurse, on the same

4

issue, contending that "Weintraub guesses the step of placing the underpad is 'almost always' performed." (*Id.*) Bard argued that Ms. Weintraub lacked sufficient facts or data to support her opinion about the extent of infringement (including the use of the underpad), because "she conducted no surveys." (Dkt. No. 528 at 9.) Bard argued to the Court, "[h]ad Weintraub performed a statistically valid *survey of clinicians using SureStep*, it might have been admissible to demonstrate what is done elsewhere." (*Id.* at 10 (emphasis added).)

The Court denied Bard's *Daubert* motions in September 2021. (Dkt. No. 683.) The Court found that Ms. Weintraub, a practicing nurse, had "sufficient specialized experience to opine as to the steps that clinicians typically take when using catheterization kits, including whether clinicians employ the steps outlined in written instructions, like those that come with the SureStep kit." (*Id*. at 4.) The Court further stated that, with respect to Ms. Weintraub's testimony, "the deficiencies identified by Bard go to weight for the jury to consider, not admissibility in the first instance." (*Id*. at 5.)

In March 2022, the Court also granted summary judgment of direct infringement and inducement of infringement. (Dkt. No. 694.) The Court found that Bard's underpad-based arguments were untimely and should have been disclosed in Bard's non-infringement contentions. (*Id*. at 6-8.) The Court found "that Medline has been prejudiced by Bard's strategy of waiting until expert discovery to disclose its various non-infringement contentions." (*Id.* at 8.) The Court held "that Bard may not assert the absence (occasional, substantial, or otherwise) of any method step from claim 1 of the '786 Patent as a defense to Medline's direct infringement, induced infringement, or contributory infringement claims." (*Id*.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(e)(1)(A) provides that a party who has responded to a request for production "must supplement or correct its disclosure or response … in a timely

manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Courts have broad discretion to determine whether a party's failure to comply with Rule 26(e) merits sanctions, or is substantially justified or harmless. *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 640 (7th Cir. 2005); Fed. R. Civ. P. 37(c)(1). Under Rule 37(c)(1), the Court may in its discretion "order payment of the reasonable expenses, including attorney's fees, caused by the failure" and may "inform the jury of the party's failure." Fed. R. Civ. P. 37(c)(1)(A)-(B). In addition, under Rule 37(c)(1)(C), the Court may "impose other appropriate sanctions," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; … [or]
> (vi) rendering a default judgment against the disobedient party; …

Fed. R. Civ. P. 37(b)(2)(A).

"[D]istrict courts have wide latitude in fashioning appropriate sanctions" for discovery violations, *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011) (quotation marks omitted), including "the failure to … produce documents." *Northington v. H & M Int'l*, No. 08-CV-6297, 2011 WL 663055, at *12 (N.D. Ill. Jan. 12, 2011), *report and recommendation adopted*, No. 08 C 6297, 2011 WL 662727 (N.D. Ill. Feb. 14, 2011). Where a litigant knows or should have known that it was acting in violation of a discovery order, the court may find the litigant at fault. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 671 (7th Cir. 1996); *see e360 Insight*, 658 F.3d at 642-43 ("negligence … is a degree of fault sufficient for imposing sanctions").

The Northern District of Illinois has imposed sanctions for a wide variety of discovery violations, tailored to the details of the violations and their relationship to the overall case. *See, e.g.*, *Colyer v. City of Chi., Gildardo Sierra*, No. 12 C 04855, 2016 WL 25710, at *14 (N.D. Ill.

Jan. 4, 2016) (granting a new trial and attorneys' fees and costs due to defendants' withholding of audio file responsive to plaintiffs' requests for production); *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *10 (N.D. Ill. May 25, 2010) (imposing sanctions including informing jury that defendant did not preserve email communications relevant to plaintiff's allegations); *Negrete v. Amtrak*, No. 05 C 0873, 2007 U.S. Dist. LEXIS 112549, at *3 (N.D. Ill. Aug. 21, 2007) (dismissing case as sanction where plaintiff, among other discovery violations, identified only evidence supporting his claim while concealing evidence which "undercut his allegations"); *Spina v. Forest Pres. of Cook Cnty.*, No. 98 C 1393, 2001 WL 1491524, at *4 (N.D. Ill. Nov. 23, 2001) (concluding that plaintiff would not be required to prove certain allegations that related to improperly-withheld evidence); *Howard v. Sweetheart Cup Co.*, No. 00 C 648, 2001 WL 721765, at *2-4 (N.D. Ill. June 27, 2001) (awarding monetary sanctions following defendant's selective production of documents).

Indeed, this District has previously sanctioned Bard for discovery misconduct. In the *Medline III* case between the parties before Judge Ellis, Bard produced a sample of a further redesign of its SureStep kits, called SureStep 1.1, long after the close of discovery. *See Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 C 7216, 2021 WL 809734 (N.D. Ill. Mar. 3, 2021), at *1. Bard then served expert reports addressing this previously-undisclosed kit. *See id.* Medline moved to strike, because Bard had clearly known about the planned SureStep 1.1 kit long before its disclosure, but had withheld all information concerning it. The *Medline III* court agreed, and found that "Bard's September 2020 disclosure of SureStep 1.1 violated Rule 26(e) and was neither substantially justified nor harmless under Rule 37(c)" and therefore imposed sanctions, awarding Medline attorneys' fees and expenses, including expert fees. *See id.* at *1, 9-10.

**ARGUMENT**

**I.     Bard's Failure to Produce the 2018 Survey Violated its Discovery Obligations.**

Medline served multiple document requests pursuant to Fed. R. Civ. P. 34 seeking

information about the use of Bard's accused products, including a request explicitly seeking

"usage surveys." *See supra* at 2-3.  Bard agreed to produce any responsive surveys, but Bard

never produced the 2018 Survey.  That failure violated Bard's obligations to timely supplement

its responses to Medline's requests for production.  Fed. R. Civ. P. 26(e)(1)(A).

Medline raised the failure to produce the 2018 Survey with Bard on July 25, 2022, and

Bard responded on July 31, 2022, offering a series of excuses as to why it had no obligation to

produce the 2018 Survey.  *See* Exs. 10-11, 15 at 2-3.  All are without merit.

First, Bard contends discovery closed in March 2016, and that fact discovery was

reopened in 2019 only for limited issues concerning claim construction, damages, and

willfulness.  Ex. 11 at 1-2; Ex. 15.  Even if discovery had been open only for narrow purposes,

Bard had an ongoing obligation to supplement its discovery responses under Fed. R. Civ. P.

26(e)(1)(A).  Regardless, the scope of discovery clearly included documents concerning the use

of accused products.  As Counsel for Bard advised the Court at the February 19, 2019 hearing,

"[W]e would essentially be conducting all discovery in all three cases [*Medline I-III*] between

now and May 10, and *Bard has agreed to that.*"  (Dkt. No. 358 at 5:8-16 (emphasis added).)

Having told the Court it was conducting "all discovery," Bard cannot now contend that it was

entitled to withhold a relevant document by claiming it was unrelated to claim construction,

damages, or willfulness.  Notably, Bard still maintains that the extent of underpad use *is* relevant

to damages, Ex. 11 at 3, so even under Bard's theory of limited discovery, it should have

produced the 2018 Survey.

8

Second, Bard claims the 2018 Survey was not responsive because Medline's document requests referred to the "Accused Products," and following this Court's 2020 rulings (Dkt. Nos. 481, 512), this case is now limited to the original SureStep kit. But while the 2018 Survey concerns the redesigned SureStep kit, which launched in early 2016, the underpad issue addressed has far broader applicability. The sole difference between the original and redesigned SureStep kits is the shape of an internal tray divider wall. Both kits include the same underpad and provide the same DFUs directing clinicians to place the underpad. Evidence of how clinicians place the underpad from the redesigned SureStep kit is highly relevant to how clinicians place the underpad from the original SureStep kit. Moreover, as noted above, in December 2016 (after the March 2016 date Bard erroneously identifies as the close of discovery) Bard produced a June 2016 "Observational Study" of Foley catheter tray usage, and Bard's experts rely on that study in their expert reports. Bard cannot selectively produce and rely on documents concerning usage of SureStep kits following the redesign, and then justify—years after the fact—its withholding of other such documents based on the Court's 2020 rulings.[1]

Third, Bard contends that the 2018 Survey does not contradict Dr. Yun's opinions because "Dr. Yun's opinions were directed to the products that were actually at issue in *Medline I*"—the original SureStep kits. Ex. 11 at 2. Bard is wrong. Dr. Yun states "I have experience using (and also currently use) the Bard SureStep tray products (both the version with the opening in the divider wall and newer version)," and offers opinions concerning the underpad with respect to "the SureStep tray" generally. Ex. 5 (Yun Rebuttal Rpt.) ¶¶ 14, 27-29. By contrast,

---

[1] Notably, in May 2019 and throughout discovery, Bard produced many documents concerning the redesigned SureStep kit. For example, in response to Interrogatory No. 3, which sought (among other information) "the number of Accused Products sold" by Bard, on May 31, 2019, Bard served a supplemental response identifying data produced that month for sales of the redesigned SureStep kit through May 2019. Ex. 12 (citing BARD_0443891).

when offering opinions specifically directed to the original SureStep kit and the now-dropped '190 patent, Dr. Yun identifies it separately as "the SureStep tray that included an opening in a divider wall" or "the previous version of the SureStep tray." *Id.* at ¶¶ 33, 36; *see also* Ex. 4 (Yun Opening Rpt.) ¶ 157 ("previous iterations of this tray did include such an opening"). Dr. Hillstead relies on Dr. Yun in opining that the underpad step is not performed, and his 2019 opinions are explicitly directed to "the accused SureStep tray" that "Bard currently sells." Ex. 6 ¶¶ 54-56, 94. When Dr. Hillstead offers opinions concerning the original SureStep kit only, he too identifies it separately. *See id.* at ¶¶ 138-139 (stating that "the accused SureStep trays that currently are sold do not include 'an opening in a first barrier…'" and addressing the '190 patent only with respect to "the versions of the accused SureStep trays that were sold when it was initially launched"). Regardless, because the 2018 Survey shows ███████████████ ████████████████ the very same DFUs present in both versions of the SureStep kit, the 2018 survey contradicts Dr. Yun's and Dr. Hillstead's opinions, even if those opinions had been directed solely at the original SureStep kit (which they were not).

## II. Bard's Discovery Violation Is Neither Substantially Justified Nor Harmless.

Bard's withholding of the 2018 Survey was not substantially justified or harmless so as to avoid sanctions under Rule 37(c)(1). Bard conducted the survey in 2018—four years after this litigation was filed—and the contents of the survey (especially its findings on underpad use) are highly relevant to the disputed issues in this case. As explained above, Bard can provide no justification, much less substantial justification, for its failure to produce the 2018 Survey.

Bard's concealment of the 2018 Survey was also not harmless. First, and most critically, Bard's affirmative arguments to the Court that are contradicted by the 2018 Survey were detrimental to this Court's orderly and efficient management of this case. Bard urged the Court to deny Medline's motion for summary judgment, and sought to exclude testimony of Medline's

10

experts, by disputing how frequently clinicians use the SureStep underpad. Bard specifically and repeatedly argued to the Court that Medline's lack of *survey evidence of underpad use* compelled denying Medline's motion and excluding its experts. (*See* Dkt. No. 579 at 23; Dkt. No. 532 at 6; Dkt. No. 528 at 10). At all times when Bard made these arguments to the Court, Bard had the 2018 Survey in its possession. That document fully supported Medline's position ███████

█████████████████████████████████████ and weighed heavily in favor of granting Medline's summary judgment motion and denying Bard's *Daubert* challenges. But Bard withheld the 2018 Survey, forcing the Court to expend time and resources to resolve the motions without knowing the facts Bard had in its possession that contradicted Bard's arguments.

Second, Bard's misconduct severely prejudiced Medline. Medline, like the Court, expended significant resources litigating the underpad issues while Bard withheld the 2018 survey. Further, Medline had no ability to depose Bard's experts concerning the 2018 Survey, which directly undermined their positions. Medline's experts also had no opportunity to rely on the 2018 Survey, which supported Ms. Weintraub's opinions ███████████████████████

█████████████████████████ Bard then specifically criticized Medline's experts for the lack of survey evidence supporting their positions, and convinced the Court that Bard should be permitted to challenge Medline's experts on that point at trial. (Dkt. No. 683 at 5.)

Third, Bard's failure to produce the 2018 Survey also infected the testimony of its own experts. Specifically, Bard appears to have withheld the 2018 Survey from Dr. Yun, while providing him with a different Bard study supposedly supporting his opinions. So Dr. Yun opined that the underpad was used only 15-20% of the time, apparently unaware of Bard's 2018 Survey showing ████████████████████████████████████████████

███████████████████████. Similarly, Dr. Hillstead testified that he was unaware of any

11

evidence concerning the percentage of procedures using SureStep in which clinicians place the included underpad. Ex. 9 at 124:6-14, 124:16-23. Presumably, Dr. Yun and Dr. Hillstead would not have offered those opinions (or, perhaps, any opinions on behalf of Bard at all) if they were aware that Bard had withheld from them evidence demonstrating that they were wrong.

## III.    Bard Should Be Sanctioned for Failing to Produce the 2018 Survey.

The Court has broad discretion to fashion appropriate sanctions based on the facts of the case and the misconduct at issue. *e360 Insight*, 658 F.3d at 642. As noted above, Bard has already been sanctioned for discovery misconduct in *Medline III*, and the Court may shape sanctions to deter future misconduct. *E.g.*, *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2022 WL 160282, at *3 (N.D. Ill. Jan. 18, 2022) (a sanction of attorneys' fees was "in part sufficient to deter similar improper conduct from occurring in the future"); *Bailey v. Worthington Cylinder Corp.*, No. 16 CV 7548, 2021 WL 4440317, at *4-5 (N.D. Ill. Jan. 19, 2021) (plaintiff forbidden from introducing "testimony, information, declarations, or documents" from two expert witnesses because the court was "unpersuaded that a monetary sanction would deter [plaintiff] from disobeying a court order in the future), *report and recommendation adopted sub nom. Bailey v. Worthington Cylinders Wis. LLC*, No. 16 C 07548, 2021 WL 3362419 (N.D. Ill. Aug. 3, 2021); *Colyer*, 2016 WL 25710, at *21 ("no lesser sanction" than a new trial and attorneys' fees would "provide an adequate deterrent" against relevant misconduct). Medline believes the following sanctions are appropriate.

### A.    Bard Should Be Precluded from Disputing the Extent of Underpad Use.

The Court already held in granting summary judgment "that Bard may not assert the absence (occasional, substantial, or otherwise) of any method step from claim 1 of the '786 Patent as a defense to Medline's direct infringement, induced infringement, or contributory infringement claims." (Dkt. No. 694 at 8.) Notwithstanding this ruling, however, Bard has

12

confirmed that it still intends to dispute the extent of use of the underpad at trial to try to limit its damages. Ex. 11 at 3.

Bard should not be permitted to do so. First, the Court's summary judgment ruling already bars such arguments, and Bard should not be permitted to confuse the jury by offering a prohibited non-infringement theory under the guise of disputing damages or contesting willfulness. Second, even leaving aside the Court's ruling, Bard should be barred from offering evidence and arguments that are contradicted by the 2018 Survey that it improperly withheld. *Cf. Total Control, Inc. v. Danaher Corp.*, 359 F. Supp. 2d 387, 399-400 (E.D. Pa. 2005) (barring defendant from introducing at trial evidence that contradicted earlier discovery disclosures).

Accordingly, the Court should strike all content from the expert reports of Dr. Yun, Dr. Hillstead, and Mr. Sims that disputes the extent of use of the underpad in the SureStep kit, and bar those experts from offering any testimony on the subject at trial. Bard should also be precluded from offering any fact testimony at trial disputing the extent of use of the underpad in the SureStep kit, from advancing attorney argument on the subject, or from cross-examining any Medline fact or expert witness on the extent of use of the underpad in the SureStep kit.

## B. The Court Should Instruct the Jury to Award Damages for All SureStep Sales.

Bard has taken the position that any damages in this case should be reduced to reflect the possibility that some of Bard's SureStep sales may not be associated with infringement, because the clinician who ultimately uses a particular kit might not use the included underpad, as the DFUs and claim 1 of the '786 patent require. (*See* Dkt. No. 531 at 6-7 ("[D]amages here must be limited to only specific instances of infringement proved by Medline"); Ex. 11 at 3.) Medline disagrees with Bard's position. But in view of the summary judgment ruling, as well as Bard's failure to produce the 2018 Survey, Bard should not be permitted to make any such suggestion to

13

the jury. Bard's misconduct here justifies explicitly instructing the jury, for avoidance of doubt, that its damages determination in this case should encompass all SureStep sales.

### C.    The Court Should Inform the Jury that Bard Withheld Evidence of the Extent of its Infringement.

Bard's withholding of the 2018 Survey demonstrates Bard's effort to conceal the extent of its infringement. Bard's own proposed jury instruction on willful infringement (which will be at issue in the upcoming trial) directs the jury to "consider all of the circumstances" and "consider whether Bard's behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith." Ex. 13 at 102. Under that instruction, Bard's efforts to conceal evidence of infringement are plainly relevant to the jury's determination of willfulness. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1377-79 (Fed. Cir. 2020) (noting that "facts that the jury could properly consider" in assessing willfulness included whether the defendant "tried to cover up its infringement"). Accordingly, the Court should inform the jury that Bard withheld evidence concerning the extent of its infringement.

### D.    No Lesser Sanctions Would Be Adequate or Appropriate.

Bard may suggest in response that Medline could simply be permitted to introduce the 2018 Survey at trial. Bard may also offer that Medline may take additional depositions of Bard's experts or employees on the subject of the 2018 Survey, and/or that Medline may issue supplemental expert reports addressing the 2018 Survey. Such steps are inadequate as they would fail to cure the prejudice to Medline and the Court, and would impose no consequences on Bard. Medline filed this case in 2014, and the parties have been preparing for trial since 2020. By failing to produce the 2018 Survey, Bard clouded the issues in summary judgment and *Daubert* briefing, further delaying resolution of the case while the Court resolved dispositive motions. Imposing further fact and expert discovery on Medline would only compound the

14

waste of resources, and interfere with and delay preparation for the April 2023 trial. *See NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2021 WL 1057312, at *6 (N.D. Ill. Mar. 18, 2021) (rejecting offer of continuance and new expert report as a cure for a discovery violation, because it would be "tantamount to saying that the required disclosures and discovery deadlines just don't matter, because deadlines and dates, including trial dates, can always be extended or moved").

> **E.     The Court Should Order Bard to Show Cause for Its Failure to Produce the 2018 Survey and Reserve the Question of Further Sanctions.**

The sanctions outlined above do not require any finding of willfulness, bad faith, or fault—Bard's mere negligence in failing to produce the 2018 Survey would be enough. *e360 Insight*, 658 F.3d at 642. However, willfulness, bad faith, or fault may provide a basis for the Court to direct entry of default judgment against Bard. *Id*. If Bard intentionally, knowingly, and/or willfully concealed the 2018 Survey, while offering expert testimony and advancing arguments to the Court that are directly contradicted by the 2018 Survey, the Court can and should consider that severe sanction. *In re Golant*, 239 F.3d 931, 936, n.1 (7th Cir. 2001). *See e360 Insight*, 658 F.3d at 642 ("A showing of willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction.").

## CONCLUSION

For the foregoing reasons, Medline respectfully requests that the Court sanction Bard for its discovery misconduct as set forth above and in the Proposed Order submitted herewith, along with any other relief the Court deems appropriate.


Dated:  August 5, 2022                         Respectfully submitted,


                                                       /s/ *Thomas D. Rein*

15

Thomas D. Rein (IL 6186187)
trein@sidley.com
Stephanie P. Koh (IL 6279210)
skoh@sidley.com
Nathaniel C. Love (IL 6303857)
nlove@sidley.com
Gwen Hochman Stewart (IL 6300029)
gstewart@sidley.com
Courtney E. Cronin (IL 6326779)
courtney.cronin@sidley.com
**Sidley Austin LLP**
One South Dearborn
Chicago, IL, 60603
Telephone: (312) 853-7000

Allen E. Hoover (IL 6216256)
ahoover@fitcheven.com
Stanley A. Schlitter (IL 2488604)
sschlitter@fitcheven.com
Joseph F. Marinelli (IL 6270210)
jmarinelli@fitcheven.com
Nicole L. Little (IL 6297047)
nlittle@fitcheven.com
**Fitch, Even, Tabin & Flannery LLP**
120 South LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (312) 577-7000

*Attorneys for Plaintiff Medline Industries, LP*

16

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing is being served by CM/ECF on August 5, 2022

to all counsel of record.

/s/ *Thomas D. Rein*